**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Paul A Fussell, et al., | No. CV-24-03414-PHX-SHD |
| Plaintiffs, | **ORDER** |
| v. | |
| Sun Vista RV Resort LLC, et al., | |
| Defendants. | |

Pending before the Court are Defendants Sun Vista RV Resort L.L.C. ("Sun Vista"), Leesburg Group L.C., and William Corrigan's (collectively, "Defendants") motions to dismiss Plaintiffs Paul and Eilleen Fussell's[1] Second Amended Complaint ("SAC"). (Docs. 39, 56.)   For the reasons explained below, Defendants' motions to dismiss is **granted in part and denied in part**.

I.    **BACKGROUND**

The following facts alleged in the SAC are presumed true and construed in the light most favorable to the Fussells.  Paul began living at Sun Vista in 2017.  (Doc. 53 ¶ 10.) Sun Vista's management approved Eilleen's residency in January 2022, after "extensive consultation" and "acknowledg[ing] and accept[ing] federal visa documentation."  (*Id.*) Eilleen then moved to Sun Vista in September 2022 "with full management knowledge." (*Id.*)  After "two years of peaceful residency without incident," on November 12, 2024, Sun Vista's manager asked Eilleen for new registration requirements.  (*Id.* ¶¶ 10, 12.)  Sun

---

[1]    Paul and Eilleen are referred to by their first names to avoid confusion, and not out of any disrespect.

Vista requested a "700+ credit score" and certain background checks (the "Registration Requirements"). (*Id.* ¶ 14.) The Fussells responded by delivering "extensive documentation including [Eilleen's] valid permanent resident card, Arizona state identification, prior management approval, and demonstrat[ed] history of accepted residency." (*Id.* ¶ 12.) At a meeting later that month, Sun Vista's manager told the Fussells that Paul was "grandfathered in" to the Registration Requirements but Eilleen was not, everyone had to comply with the Registration Requirements with no exceptions, and "everybody ha[d] to do it, or [Eilleen could] not stay in [Sun Vista]." (*Id.* ¶ 13.)

Despite Sun Vista management's prior approval, during this period, management had "shifting explanations for suddenly 'discovering' [Eilleen's] residency after two years": Sun Vista initially claimed Eilleen had requested a name badge from Sun Vista's office, then stated she had registered for Sun Vista events, and "finally admitt[ed]" they did not know how they learned of her residency. (*Id.* ¶ 15.) The Fussells tried to resolve the situation by notifying the Department of Housing and Urban Development ("HUD"), requesting to speak with Defendants' legal counsel, requesting to contact the property owners, and attempting to call the owners. (*Id.* at 6; *id.* ¶ 16.) Defendants ignored these communications. (*Id.* ¶ 16.)

The Fussells filed the instant case in December 2024, (Doc. 1), but amended their complaint in February 2025, (Doc. 29). The First Amended Complaint ("FAC") named Sun Vista; Leesburg Group L.C., which "exercises control" over Sun Vista operations; individual defendant William Corrigan, who also "exercises direct control" over Sun Vista operations; and individual defendant Ronald Thayer. (Doc. 29 ¶¶ 4–7.) Defendants moved to dismiss the FAC. (Doc. 39.) This motion was fully briefed by the parties. (Docs. 49, 52.) The Fussells then filed the SAC in March 2025, naming the same defendants as in the FAC, except for Ronald Thayer, who was removed. (Doc. 53 at 11, ¶¶ 4–7.) The SAC is, for the most part, identical to the FAC. (*See* Docs. 29, 53.) Defendants filed a second motion to dismiss, noting that while the SAC did not seek permission from the Court to file as required under Rule 15(a)(2), because it appeared the primary substantive change to

1    the SAC was the removal of individual defendant Ronald Thayer, Defendants moved to

2    dismiss "as if [the Fussells] had received permission to file [the SAC]."  (Doc. 56 at 2.)

3    Defendants incorporated their arguments from their prior motion to dismiss.  (*Id.*)

4    After reviewing the Fussells' complaints and Defendants' motions to dismiss, the

5    Court deemed Defendants' second motion to dismiss as Defendants' written consent to the

6    SAC's filing, *see* Fed. R. Civ. P. 15(a)(2) (allowing plaintiffs to amend their complaint

7    with opposing party's written consent), and therefore the SAC was the operative complaint.

8    (Doc. 67 at 1.)  On May 8, 2025, the parties argued the motions to dismiss.  (Doc. 71.)

9    ## II.    LEGAL STANDARD

10    "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

11    accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim

12    to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

13    modified).  A claim is plausible if the plaintiff pleads "factual content that allows the court

14    to draw the reasonable inference that the defendant is liable for the misconduct alleged."

15    *Id.*  In making this determination, legal conclusions are not accepted as true, nor are

16    "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

17    statements" considered.  *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked

18    assertion[s] devoid of further factual enhancement." (alteration in original) (citation

19    modified)).  That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does

20    not need *detailed* factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

21    (2007) (emphasis added).  A "well-pleaded complaint may proceed even if" actual proof

22    of those facts "is improbable and that a recovery is very remote and unlikely."  *Id.* at 556

23    (citation modified).  Pro se filings must be construed "liberally when evaluating them under

24    *Iqbal.*"  *Jackson v. Barnes*, 749 F.3d 755, 763–64 (9th Cir. 2014) (citation omitted).

25    ## III.    DISCUSSION

26    ### A.    Fair Housing Act Violations

27    The Fussells allege various Fair Housing Act ("FHA") violations (collectively

28

1    alleged under "Count One").[2]  Specifically, they bring claims of (1) race discrimination

2    based on Defendants' alleged selective enforcement of the Registration Requirements

3    against Eilleen; (2) failure to accommodate based on Paul's disability; and (3) retaliation

4    based on the Fussells' efforts to resolve their housing issues.  Each claim is considered in

5    turn.  The "threshold for pleading discrimination claims under the FHA[] is low."  *McGary*

6    *v. City of Portland*, 386 F.3d 1259, 1262 (9th Cir. 2004) (citation modified).

7              **1.    Eilleen's Failure to Sign the FAC**

8              As a threshold matter, Eilleen has not signed the SAC, which she is required to do.

9    Fed. R. Civ. P. 11(a); *see Smith v. Parole Div. C.D.C.*, 2011 WL 445818, at *4 (E.D. Cal.

10   2011) ("By signing an amended complaint, plaintiff certifies [she] has made reasonable

11   inquiry and has evidentiary support for [her] allegations and that for violation of this rule

12   the court may impose sanctions sufficient to deter repetition by plaintiff or others.").

13   Instead, Paul signed the SAC on behalf of both plaintiffs.  (Doc. 53 at 33.)  Paul cannot act

14   on Eilleen's behalf because a pro se litigant cannot represent another person.  *See Johns v.*

15   *County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear

16   pro se on his own behalf, he has no authority to appear as an attorney for others than

17   himself." (citation modified)); *see also Gantt v. Dir. of FBI*, 2024 WL 2214558, at *3 (D.

18   Haw. 2024) (holding that a plaintiff could not sign on behalf of another plaintiff because

19   "[a]n individual proceeding pro se may not proceed on behalf of another").

20             Therefore, Eilleen's claims are dismissed with leave to amend for her failure to sign

21   _____

22   [2]       Defendants argue the Fussells have not adequately alleged violations of the Arizona
     Fair Housing Act ("AFHA").  (Doc. 39 at 9.)  It is unclear whether the Fussells intended
23   to bring claims under the AFHA because, although they cite two AFHA statutes in their
     table of authorities, they bring Count One under the FHA specifically and do not otherwise
24   mention the AFHA.  (Doc. 53 at 3.)  Further, the Fussells do not respond to Defendants'
     argument about the AFHA.  (*See* Doc. 49.)  Thus, to the extent the Fussells are bringing
25   claims under the AFHA, they have abandoned these claims and consented to their dismissal
     by failing to respond.  *See Dinnerman v. Datto, Inc.*, 2024 WL 4406923, at *3 (C.D. Cal.
26   2024) (holding that by failing to respond to the defendants' argument raised in their motion
     to dismiss, the plaintiffs waived their claim), *aff'd*, 2025 WL 1641888 (9th Cir. 2025).
27   Because it is not clear whether amendment of this theory would be futile, the Fussells are
     given leave to amend to the extent they are indeed asserting an AFHA claim.  *See Jackson*,
28   749 F.3d at 767 (holding the district court erred in failing to give plaintiff an opportunity
     to not amend his complaint when it was not "absolutely clear" he could not cure his
     deficiencies by amendment (citation omitted)).

the SAC.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation omitted)). The Court, however, in its discretion, addresses the Fussells' claims together to narrow the issues on amendment.

### 2.    Race Discrimination Claims

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(b).  FHA discrimination claims can be based on either a disparate treatment or disparate impact theory.  *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).  The Fussells assert both theories.  (Doc. 53 ¶ 26.)

### a.    Disparate treatment

A plaintiff asserting a disparate treatment theory must allege (1) her "rights are protected under the FHA" and (2) "as a result of the defendant's discriminatory conduct, [she] has suffered a distinct and palpable injury."  *Harris*, 183 F.3d at 1051.  The plaintiff must provide proof that the defendant intentionally discriminated against her.  *Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 661 (9th Cir. 2025).

Defendants do not dispute that the Fussells have adequately alleged the first element—that Eilleen's rights are protected under the FHA—but instead argue the Fussells have failed to show an injury.  (*See* Doc. 39 at 10.)  Defendants contend the SAC only alleges "Defendants asked [Eilleen] to complete a background and credit check," but "does not and cannot allege that Defendants ultimately forced [Eilleen] to complete those checks or that Defendants ultimately refused to rent to [the Fussells] or evicted them as a result," given the Fussells still reside at Sun Vista.  (*Id.*)  According to Defendants, under these circumstances, the Fussells cannot plausibly plead any FHA violations.  (*Id.*)  The Fussells respond that under Section 3604(b), discrimination "in the terms, conditions, or privileges of [] rental of a dwelling" is actionable, regardless of eviction. (Doc. 49 at 2–3.)

- 5 -

The Fussells are correct that eviction is not necessary to state a claim under the FHA. The FHA protects against discrimination "in the enjoyment of residence in a dwelling or in the provision of services associated with that dwelling." *See Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 712, 714 (9th Cir. 2009); *see also Hous. Rts. Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1192 (C.D. Cal. 2004) ("The FHA thus not only demands that tenants be able to secure an apartment on a nondiscriminatory basis, but also guarantees their right to equal treatment once they have become residents of that housing." (citation modified)); *Hawkins v. Costa*, 2012 WL 6103738, at *2 (D. Nev. 2012) (the plaintiff sufficiently pled a race discrimination claim based on Defendants' failure to provide services), *report and recommendation adopted*, 2012 WL 6101871 (D. Nev. 2012). The question is thus whether the Fussells have sufficiently pled an injury, notwithstanding the fact that they have not been evicted.

The SAC alleges that Defendants selectively enforced the Registration Requirements against Eilleen upon discovering her national origin "while other residents were 'grandfathered' in without such requirements." (Doc. 53 ¶ 14.) These allegations of differential treatment are sufficient at the pleading stage to satisfy the distinct and palpable injury requirement under the FHA, as the SAC alleges Eilleen is not being treated equally compared to other residents of Sun Vista. *See, e.g.*, *Washington v. Farmington Ests. Owners Ass'n*, 2022 WL 18399534, at *5 (D. Or. 2022) (finding the plaintiff had alleged a distinct and palpable injury by alleging the defendants treated him differently to white homeowners and thus declining to dismiss his claim, "especially considering the liberal reading that must be given to a pro se plaintiff's complaint"); *see also McGary*, 386 F.3d at 1262 (noting the low threshold for pleading FHA discrimination claims under the FAC). Moreover, the SAC sufficiently alleges that Eilleen *will* be evicted if she does not comply with the Registration Requirements. (Doc. 53 ¶¶ 13 (alleging Sun Vista's manager "specifically stated . . . 'There are no exceptions; everybody has to do it, or [Eilleen] cannot stay in [Sun Vista]'"), 21 (alleging the Fussells "face potential relocation expenses if the discriminatory conduct continues").) At the motion to dismiss stage, these allegations must

1    be accepted as true.  *Iqbal*, 556 U.S. at 678.

2         In their reply, Defendants argue the Fussells "have not plausibly alleged that

3    Defendants acted with discriminatory intent or that Defendants treated similarly situated

4    individuals outside of [the Fussells'] protected classes more favorably." (Doc. 52 at 11.)

5    "[A]rguments raised for the first time in a reply brief" need not be considered, *Zamani v.*

6    *Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), and Defendants did not raise this argument in

7    response to an argument by the Fussells, *Facebook Inc. v. Namecheap Inc.*, 2020 WL

8    6585534, at *6 n.3 (D. Ariz. 2020) (noting an exception to this rule if the argument is made

9    in rebuttal to the opposing party's response).

10        Regardless, this argument is unavailing.  Defendants argue the Fussells "appear[] to

11   have drawn unwarranted inferences to presume that Defendants discriminated against

12   [them]," which "cannot carry the day," (Doc. 52 at 11 (alterations in original)), but do not

13   address the Fussells' allegations that Eilleen was specifically targeted by the Registration

14   Requirements after Defendants discovered her Filipino origin, (Doc. 53 ¶ 19), or that other

15   Sun Vista residents were "grandfather[ed]" in except for Eilleen, (*id.* ¶ 28).  Defendants

16   cite *Scutt v. Norton*, 2021 WL 5989107 (D. Haw. 2021), to argue without explanation that

17   the court granted "a motion to dismiss under similar circumstances." (Doc. 52 at 11.)  But

18   courts "cannot manufacture arguments" for a party and instead "review only issues which

19   are argued specifically and distinctly." *Indep. Towers of Wash. v. Washington*, 350 F.3d

20   925, 929 (9th Cir. 2003) (citation modified); *id.* at 930 (holding that "contentions [must]

21   be accompanied by reasons").

22        Further, *Scutt* significantly differs from this case.  There, the plaintiff only alleged

23   "conclusory statements," and her allegations were "rife with contradictions." *Scutt*, 2021

24   WL 5989107, at *3–4.  Here, considering the liberal pleading standard which must be

25   applied, the Fussells have raised a reasonable inference of discrimination given their

26   allegations that Eilleen experienced "[t]wo years of peaceful residency without incident,"

27   (Doc. 53 ¶ 10), but Defendants "sudden[ly] [enforced] requirements upon discovering

28   Eilleen's Filipino origin," (*id.* ¶ 19).  Defendants have not sufficiently met their burden of

- 7 -

1    showing dismissal is warranted. *See Kuhl v. McDonough*, 2024 WL 3463350, at \*10 (N.D.

2    Cal. 2024) (holding the party moving to dismiss must explain why dismissal is warranted).

3    But, as noted above, because Eilleen failed to sign the SAC, the Fussells' race

4    discrimination claims as to Eilleen are dismissed with leave to amend. *See Johns*, 114 F.3d

5    at 876.

6         Turning to Paul's disparate treatment theory, Defendants argue Paul has not shown

7    he is a member of a protected class because "economic status and source of income are not

8    protected classes under the FHA." (Doc. 52 at 11.)  Again, the FHA only makes

9    discrimination actionable if it is based on a protected class, like national origin. 42 U.S.C.

10   § 3604(b).  The SAC and the Fussell's briefing establish thatPaul's alleged injury stems

11   from Defendants' discriminatory conduct towards Eilleen based on her national origin,

12   rather than from Paul's economic status.  (*See* Doc. 53 at 7 (arguing "the discriminatory

13   conduct impacts both spouses' rights to equal housing opportunity under *Trafficante v.*

14   *Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972))".)  Therefore, the question is not whether

15   Paul is a member of a protected class, but rather whether he has standing to sue based on

16   alleged national origin discrimination against Eilleen.

17        "The Supreme Court has long held that claims brought under the [FHA] are to be

18   judged under a very liberal standing requirement." *San Pedro Hotel Co. v. City of Los*

19   *Angeles*, 159 F.3d 470, 475 (9th Cir.1998).  Under the FHA, any "aggrieved person" may

20   file a complaint alleging a discriminatory housing practice.  42 U.S.C. § 3613(a)(1)(A).

21   An "aggrieved person" is defined as "any person who [] claims to have been injured by a

22   discriminatory housing practice." *Id.* § 3602(i).  A "discriminatory housing practice" in

23   turn is defined as "an act that is unlawful under section 3604, 3605, 3606, or 3617" of the

24   FHA. *Id.* § 3602(f).  Thus, under the FHA, "any person harmed by discrimination, whether

25   or not the target of the discrimination, can sue to recover for his or her own injury." *San*

26   *Pedro Hotel Co.*, 159 F.3d at 475 (citing *Trafficante*, 409 U.S. at 212); *see, e.g.*, *A.H.D.C.*

27   *v. City of Fresno*, 2001 WL 36276740, at \*12–13 (E.D. Cal. 2001) (holding developers had

28   standing because they incurred damages resulting from defendants' interference with the

developer's prospective economic relations with people in protected classes), *amended on reconsideration on other grounds*, 2002 WL 34575401 (E.D. Cal. 2002), *aff'd sub nom.*, *Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182 (9th Cir. 2006).  Because "Congress intended standing under the FHA to extend to the full limits of Article III, . . . the sole requirement for standing to sue under the FHA is the Article III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered a distinct and palpable injury." *Walker v. City of Lakewood*, 272 F.3d 1114, 1123 (9th Cir. 2001) (citation modified).

Here, Paul alleged he has suffered injury, including in the form of background and credit check fees, administrative costs in defending the Fussells' rights, potential relocation expenses if the alleged discriminatory conduct continues, and "severe emotional distress" from his potential displacement.  (Doc. 53 at ¶ 21.)  Therefore, he has sufficiently alleged a distinct and palpable injury to himself resulting from Defendants' alleged discriminatory conduct towards Eilleen and has standing to sue.  Because the SAC sufficiently alleges race discrimination under a disparate treatment theory, and Paul has properly signed the SAC, (Doc. 53 at 33), Defendants' motion to dismiss the SAC's race discrimination claims is denied as to Paul.

## b.    Disparate Impact

Turning to the Fussells' disparate impact theory, a plaintiff must allege "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Comm. Concerning Cmty. Improvement*, 583 F.3d at 711 (citation modified).  Defendants argue (1) there is inconsistent case law regarding whether Section 3604(b) allows for a disparate impact claim, and (2) the Fussells have not met the "robust causality requirement" for a disparate impact claim, "under which [the Fussells] must plausibly allege statistical evidence demonstrating that Defendants' policies disproportionately affected" Eilleen's protected class compared to others outside this class. (Doc. 52 at 10.)

1    Defendants again raise arguments for the first time in their reply brief, so they need

2    not be addressed.  *See Zamani*, 491 F.3d at 997.  In any event, these arguments are

3    unavailing.  Regarding the first contention, Defendants merely note without analysis there

4    is "inconsistent case law." (Doc. 52 at 10.)  Defendants then cite case law stating "there is

5    some question" as to whether disparate impact claims can be brought under Section

6    3604(b) given the Supreme Court's decision in *Texas Department of Housing &*

7    *Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015)

8    [hereinafter *Inclusive Communities*].[3]  *See Sw. Fair Hous. Council Inc. v. Maricopa*

9    *Domestic Water Improvement Dist.*, 438 F. Supp. 3d 991 (D. Ariz. 2020), *aff'd*, 9 F.4th

10   1177 (9th Cir. 2021), *withdrawn and superseded on denial of reh'g en banc*, 17 F.4th 950

11   (9th Cir. 2021), *and aff'd*, 17 F.4th 950 (9th Cir. 2021).

12   In *Southwest Fair Housing Council, Inc.*, the Ninth Circuit concluded that

13   "*Inclusive Communities* did not expressly upset" the Ninth Circuit's previous holding in

14   *Ojo v. Farmers Group, Inc.*, 600 F.3d 1201, 1203 (9th Cir. 2010)—that disparate impact

15   claims are permitted under Section 3604(b)—and the parties had not argued the court

16   should "revisit that holding."  *Sw. Fair Hous. Council, Inc.*, 17 F.4th at 959 n.4.

17   Accordingly, *Ojo* is still the law of this Circuit, and the Court is bound by it.

18   Defendants' argument that the Fussells must allege statistical evidence to prove their

19   disparate impact claim is also unpersuasive.  (*See* Doc. 52 at 10–11.)  In *Inclusive*

20   *Communities*, the Supreme Court held that "[a] plaintiff who fails to allege facts at the

21   pleading stage *or* produce statistical evidence demonstrating a causal connection cannot

22   make out a prima facie case of disparate impact." 576 U.S. at 543 (emphasis added).  Here,

23   while the Fussells have not alleged statistical evidence, they alleged other facts to

24   demonstrate a causal connection between Defendants' alleged discriminatory conduct and

25   their injury.  *See Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1227 (9th

26   Cir. 2023) (holding that "statistics are not strictly necessary" to support disparate impact

27

28   ---
     [3]  In *Inclusive Communities*, the Supreme Court held that Section 3604(a) allows disparate impact claims but did not address whether these claims were also permitted under Section 3604(b).  See 576 U.S. at 534, 545–46.

claims); *Alozie v. Ariz. Bd. of Regents*, 2017 WL 11537899, at *8 (D. Ariz. 2017) ("Plaintiff's disparate impact claim need not be supported by statistical proof at the pleading stage.").

The Fussells contend Defendants' facially neutral policies, specifically the "demand for a 700+ credit score," impact recent immigrants because immigrants lack an "extensive U.S. credit history."  (Doc. 53 ¶ 14.)  The Fussells conclude this discriminatory conduct "has caused [the Fussells] substantial concrete injuries," including their potential relocation expenses if the conduct continues and severe emotional distress.  (*Id.* ¶ 21.)  Defendants do not explain why these are not plausible allegations that their facially neutral policies disproportionately impact recent immigrants like Eilleen.  Instead, Defendants state that in *Chen v. Commodore Management Company*, 2024 WL 2922777 (D. Md. 2024), the plaintiffs' claims were dismissed under "similar circumstances," but they do not explain why that case is analogous here.  (*See* Doc. 52 at 11.)  Again, Defendants' argument will not be made for them, *see Indep. Towers of Wash*, 350 F.3d at 929, and in any event *Chen* is inapposite because there, the plaintiffs did not allege any causal connection between the defendants' actions and the resulting effect on the plaintiffs' class, 2024 WL 2922777, at *6.  Construed liberally, the SAC states a disparate impact claim that is plausible on its face.  *See Iqbal*, 555 U.S. at 678; *Jackson*, 749 F.3d at 763–64; *see, e.g.*, *Strole v. Wirth*, 2025 WL 1019197, at *3 (D. Ariz. 2025) (allowing a disparate impact claim to proceed at the pleading stage where a plaintiff alleged she had suffered discriminatory enforcement of policies compared to male tenants and denial of the same rights and privileges held by other tenants).

Because of Eilleen's failure to sign, her race discrimination claim under a disparate impact theory is dismissed, but for the reasons explained above, she is granted leave to amend.  As Paul has properly signed the SAC, (Doc. 53 at 33), Defendants' motion to dismiss his race discrimination claim under a disparate impact theory is denied.

### 3.    Retaliation Claim

To the extent the Fussells assert an FHA retaliation claim, they have failed to state

1    a claim.[4]  The FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any

2    person in the exercise or enjoyment of, or on account of his having exercised or enjoyed .

3    . . any right granted or protected" by the FHA.  42 U.S.C. § 3617.  To state a claim for

4    retaliation, a plaintiff must allege (1) she engaged in a protected activity, (2) an adverse

5    housing consequence casually linked to that activity and (3) resulting damage.  *Walker*,

6    272 F.3d at 1128 (citation omitted).

7        Construing the SAC liberally, the Fussells sufficiently allege they engaged in

8    protected activities through notifying the HUD of Defendants' alleged discriminatory

9    conduct, (Doc. 53 at 6), and making multiple attempts to reach out to Defendants and their

10   legal counsel to "explain[] the situation and request[] resolution," (*id.* ¶ 16).  *See Slaughter*

11   *v. Valley View I LLP*, 2023 WL 6461058, at *2 (W.D. Wash. 2023) ("Examples of

12   protected activities include filing a formal HUD complaint and requesting a reasonable

13   accommodation for disability."); *Sturm v. Davlyn Invs., Inc.*, 2014 WL 2599903, at *6

14   (C.D. Cal. 2014) (holding that informal complaints of discrimination are protected

15   activities under the FHA).

16       Defendants do not dispute this, but they instead contend the Fussells "have not

17   alleged an objectively material adverse action as to their Section 3617 claim."  (Doc. 52 at

18   9.)  The Fussells respond that "Defendants' coercive demands and threats (*e.g.*, "she cannot

19   stay in [Sun Vista]," [Doc. 53 ¶ 13]), constitute interference" with the Fussells' housing

20   rights.  (Doc. 49 at 3.)   But these alleged adverse actions—subjecting Eilleen to the

21   Registration Requirements and Sun Vista's manager stating that Eilleen would have to

22   leave Sun Vista if she did not comply, (Doc. 53 ¶¶ 12–13)—occurred *before* the Fussells

23   engaged in any protected activity.  (Doc. 53 at 6, ¶ 16).  The SAC alleges that the Fussells

24   made their complaints *in response* to Defendants' alleged discriminatory actions, and does

25   not allege an adverse action that occurred after making these complaints.  (*See id.*)  *See*

26   *Strole*, 2025 WL 1019197, at *3 ("[A]s with Title VII retaliatory action claims, an FHA

---

27   [4]      Under the FHA, Paul has standing to bring a retaliation claim based on Defendants'
28   alleged discriminatory conduct towards Eilleen.  *See San Pedro Hotel Co*, 159 F.3d at 475;
     *Smith v. Stechel*, 510 F.2d 1162, 1163–64 (9th Cir. 1975) (allowing a real estate agent fired
     for renting apartments to minorities to bring a claim under Section 3617).

1    retaliation claim hinges on the *plaintiff's* actions that *preceded* the defendant's actions."

2    (second emphasis added)); *Morgan v. Napolitano*, 2010 WL 3749260, at *6 (E.D. Cal.

3    2010) ("As a matter of logic, one cannot be retaliated against for conduct in which he has

4    not yet engaged.").  As a result, the Fussells cannot allege a causal link exists between their

5    protected activity and the alleged adverse action.  *See Walker*, 272 F.3d at 1128 (holding

6    that an FHA retaliation claim requires the plaintiff to allege that an adverse housing

7    consequence is casually linked to the protected activity).  Therefore, the retaliation claim

8    is dismissed.  Because the Fussells could potentially cure the SAC's deficiencies by

9    amendment, however, they are given leave to do so.  *See Lopez*, 203 F.3d at 1130.

10                  **4.    Disability Claims**

11           The FHA prohibits discrimination "against any person in the terms, conditions, or

12    privileges of sale or rental of a dwelling, or in the provision of services or facilities in

13    connection with such dwelling, because of a handicap."  42 U.S.C. § 3604(f)(2).  This

14    includes "a refusal to make reasonable accommodations in rules, policies, practices, or

15    services, when such accommodations may be necessary to afford such person equal

16    opportunity to use and enjoy a dwelling."  *Id.* § 3604(f)(3)(B).  To state a claim under this

17    provision, a plaintiff must allege: "(1) he suffers a handicap as defined by the [FHA];

18    (2) defendants knew or should have known of plaintiff's handicap; (3) accommodation

19    'may be necessary' to afford the plaintiff 'an equal opportunity to use and enjoy the

20    dwelling'; and (4) defendants refused to make such an accommodation."  *Hicks v. Makaha*

21    *Valley Plantation Homeowners Ass'n*, 2015 WL 328311, at *8 (D. Haw. 2015) (citing 42

22    U.S.C. § 3604(f)(3)(B)).

23           To start, is unclear whether the SAC adequately alleges Paul's handicap by

24    conclusorily stating that Paul is disabled, received federal benefits, and has "disability

25    status" without any other facts.  (*See* Doc. 53 ¶¶ 1, 27.)   The FHA defines a handicap as

26    "(1) a physical or mental impairment which substantially limits one or more of such

27    person's major life activities, (2) a record of having such an impairment, or (3) being

28    regarded as having such an impairment."  42 U.S.C. § 3602(h).  Defendants argue that

while the SAC alleges Paul is handicapped, it provides "no additional information about the purported disability and how it impacts [Paul's] major life activities." (Doc. 39 at 8–9.) The Fussells respond that Paul's Social Security Disability Insurance status "inherently indicates a disability impacting major life activities." (Doc. 49 at 6; *see* Doc. 53 ¶ 1.)

Assuming without deciding that the SAC's allegations are sufficient to show he suffers a handicap under the FHA, the SAC does not allege that Defendants knew or should have known of Paul's handicap. *See Hicks*, 2015 WL 328311, at *8. The SAC merely alleges Defendants failed to provide reasonable accommodation for Paul's disability status and that "Defendants' rigid application of credit requirements, without consideration of [Paul's] stable federal income," violates the FHA's disability provisions. (Doc. 53 ¶ 27.) The SAC contains no allegations indicating the Fussells communicated to Defendants that Paul had a disability. (*See* Doc. 53). *See Courtney v. Hous. Auth. of the Cnty. of Kings*, 2021 WL 168285, at *5 (E.D. Cal. 2021) (holding that a plaintiff's failure to accommodate was deficient for several reasons, including that even "assuming [she] had a handicap as defined by the FHA, [she] failed to allege any facts demonstrating that [defendants] . . . knew or reasonably should have known or her handicap"); *Faruki v. Hous. Auth. for the Cnty. of Sacramento*, 2025 WL 1219575, at *2 (E.D. Cal. 2025) (plaintiff failed to state a claim when his complaint did not "allege facts demonstrating defendants knew or reasonably should have known of plaintiff's handicap or that plaintiff communicated he had a handicap to the defendants").

The Fussell's FHA claims based on Paul's disability are thus dismissed, but because it is not clear that amendment would be futile, the Fussells are given leave to amend these claims. *See Lopez*, 203 F.3d at 1130.

**B.    42 U.S.C. §§ 1981 and 1982 Discrimination Claims**

The Fussells also assert discrimination claims under 42 U.S.C. §§ 1981 (Count Two) and 1982 (Count Three) based on the Registration Requirements' modifications to the Fussells' lease agreement and property rights, respectively. (Doc. 53 ¶¶ 34, 39.) Defendants argue the Fussells have not sufficiently pled their claims because neither statute

origin.").)   *See, e.g.*, *Arnold v. Tiffany*, 359 F. Supp. 1034, 1035 (C.D. Cal. 1973) ("[Sections] 1981 and 1982 are limited to instances of racial discrimination . . . ."), *aff'd*, 487 F.2d 216 (9th Cir. 1973); *Schetter v. Heim*, 300 F. Supp. 1070, 1073 (E.D. Wis. 1969) (holding that Sections 1981 and 1982 are clearly limited to racial discrimination and "do not pertain to discrimination on grounds of religion or national origin"); *Patel v. Holley House Motels*, 483 F. Supp. 374, 382 (S.D. Ala. 1979) (holding that "an exhaustive review of cases applying [Sections 1981 and 1982] overwhelmingly supports the proposition that those provisions do not support a claim based solely upon national origin discrimination" and collecting cases).

The Fussells rely on *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) to argue that discrimination based on ancestry or ethnic characteristics, "like Eilleen's Filipino heritage," is racial discrimination under Sections 1981 and 1982.  (Doc. 49 at 4.) As previously stated, it is true that Section 1981 covers discrimination based on ancestry or ethnic characteristics.  *See Saint Francis Coll.*, 481 U.S. at 613; *see also Fonseca*, 374 F.3d at 850.  But this does not change the fact that the SAC repeatedly states that Eilleen's Section 1981 and 1982 claims are based on her national origin.  (*See, e.g.*, Doc. 53 ¶¶ 19, 32, 34, 37, 39.)  More importantly, these claims are based *solely* on her national origin, as the SAC does not mention discrimination based on her ancestry or ethnic characteristics. (*See* Doc. 53.)  *Compare Sanchez*, 2020 WL 491180, at *4 (holding that a plaintiff's Section 1981 claims were not actionable because they were based on his "Mexican" national origin rather than his race or ethnicity), *with Manatt v. Bank of Am., NA.*, 339 F.3d 792, 798 (9th Cir. 2003) (stating that although a plaintiff pled national origin discrimination under § 1981, she had raised a factual dispute as to race discrimination through alleging her coworkers mocked her "[e]ye shape [which] has nothing to do with national origin"). Denying the SAC's claims on this basis is consistent with *Saint Francis College*, as there, the Supreme Court held the plaintiff could maintain his Section 1981 claim if he could prove "he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than *solely* on the place or nation of his origin."  481 U.S. at 613 (emphasis

added); *see also Sagana v. Tenorio*, 384 F.3d 731, 739 (9th Cir. 2003) (holding that a prior Ninth Circuit case could "be read to imply that § 1981 does not protect against discrimination on the basis of national origin, and such a reading would be consistent with the Supreme Court's language and plain holdings of our sister circuits").

Because the Fussells' Section 1981 and 1982 claims are based solely on national origin discrimination, these claims are dismissed as to Eilleen.  But because Eilleen may be able to cure this deficiency, she is granted leave to amend these claims.[5]

As for Paul, in Defendants' motion to dismiss, they argue the SAC does not allege Paul's race and therefore his Section 1981 and 1982 claims should be dismissed.  (Doc. 39 at 8.)  The Fussells respond that Paul's "standing stems from his spousal relationship, not his race" under *Trafficante*, 409 U.S. at 209–10.  (Doc. 49 at 4.)  Defendants did not reply to this argument.  It is unclear whether Paul has statutory standing to bring claims under Sections 1981 and 1982 for his injury based on discrimination against Eilleen.  *Trafficante* does not apply because there, the Supreme Court interpreted statutory standing under the FHA and expressly stated it was "unnecessary to reach the question of standing to sue under 42 U.S.C. § 1982," leaving this issue undecided.  409 U.S. at 208, 209 n.8.  Neither party cites any decision that squarely addresses this issue, nor has the Court found any in its independent research.[6]

Ultimately, this issue need not be reached because, even assuming Paul could bring these claims, they would fail for the same reasons Eilleen's claims fail.  *Noel v. Hall*, 568 F.3d 743, 748 (9th Cir. 2009) (holding the Ninth Circuit could "bypass the issue [of statutory standing] when, as is the case here, the plaintiff's claims would fail anyway" because statutory standing is not jurisdictional, unlike constitutional standing).  Therefore, Paul's Sections 1981 and 1982 claims are dismissed.  For the same reasons Eilleen may amend her claims, Paul is given leave to amend.

---

[5]    Eilleen's claims separately fail for her failure to sign the SAC, but as stated, she may amend to cure this deficiency.
[6]    Per a prior Order, (Doc. 71), the Fussells filed supplemental authority on this issue, but their cited cases either pertained to other statutes or were otherwise distinguishable, (*see* Doc. 72.).

- 17 -

1          **C.**     **Constitutional Claims and Claim Under 42 U.S.C. § 1983**

2         The Fussells assert claims for damages under 42 U.S.C. § 1983 (Count Four), the

3  First Amendment (Count Five), and the Due Process and Equal Protection clauses of the

4  Fourteenth Amendment (Counts Six and Seven).  To start, Defendants argue that under

5  Ninth Circuit precedent, "a litigant complaining of a violation of a constitutional right does

6  not have a direct cause of action under the United States Constitution but must utilize 42

7  U.S.C. § 1983."  (Doc. 39 at 6 (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261

8  F.3d 912, 925 (9th Cir. 2001)).)  Section 1983 is a "vehicle by which plaintiffs can bring

9  federal constitutional and statutory challenges to actions by state and local officials."

10  *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

11         Defendants are correct that the First and Fourteenth Amendment claims should be

12  brought under Section 1983. *See Arpin*, 261 F.3d at 925; *TL Harvey v. Maxwell & Morgan*

13  *P.C.*, 2024 WL 4057455, at *3 (D. Ariz. 2024) (dismissing a plaintiff's direct

14  Constitutional claims under the First and Fourteenth Amendments pursuant to *Arpin*).  But

15  because "[a] complaint need not identify the statutory or constitutional source of the claim

16  raised in order to survive a motion to dismiss," *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th

17  Cir. 2008), the SAC's First and Fourteenth Amendment claims are construed as claims

18  brought under Section 1983.

19         Defendants contend the Fussells' Section 1983 claims should be dismissed because

20  the SAC does not allege any wrongful conduct by a state actor.  (Doc. 39 at 3.)  A Section

21  1983 claim "requires the wrongdoer to be a state actor."  *Pasadena Republican Club v. W.*

22  *Just. Ctr.*, 985 F.3d 1161, 1171 (9th Cir. 2021).  There are four tests to determine to whether

23  private entities or individuals qualify as state actors: "(1) public function; (2) joint action;

24  (3) governmental compulsion or coercion; and (4) governmental nexus," and any one test

25  is sufficient to constitute state action.  *Id.* at 1167.  The main inquiry is "whether the

26  defendant has exercised power possessed by virtue of state law and made possible only

27  because the wrongdoer is clothed with the authority of state law," regardless of which test

28  plaintiffs invoke.  *See id.* (citation omitted).  "The public function test is satisfied only on

a showing that the function at issue is both traditionally and exclusively governmental." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020) (citation modified). For both the joint action and governmental nexus tests, the court may find (1) "a sufficiently close nexus between the state and the private actor so that the action of the latter may be fairly treated as that of the State itself"; or (2) "the State has so far insinuated into a position of interdependence with the private party that it was a joint participant in the enterprise." *Id.* (citation modified). The governmental compulsion or coercion test may be satisfied "where the State has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* (citation modified).

The SAC alleges Defendants acted under color of law by "[i]mplementing state-sanctioned housing practices with discriminatory intent," "[u]sing governmental authority to enforce discriminatory policies," and "[c]reating and enforcing rules governing residential communities." (Doc. 53 ¶ 8.) This is insufficient to meet the "public function test," as the SAC does not allege Defendants' management of Sun Vista is "traditionally and exclusively governmental." *See Rawson*, 975 F.3d at 748. Further, "[g]overnment regulation of private conduct does not make that conduct state action." *Harris v. Veolia Transp. Servs.*, 738 F. Supp. 2d 1001, 1002 (D. Ariz. 2010). And the SAC's allegations do not fall under any of the other three tests outlined above. (*See* Doc. 53 ¶ 8.)

The SAC also alleges Defendants are "[e]xercising powers traditionally exclusively reserved to the state in housing regulation," citing *West v. Atkins*, 487 U.S. 42 (1988). (Doc. 53 ¶ 8.) This conclusory allegation is insufficient to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678. Further, *West* is distinguishable, as there, the plaintiff brought a Section 1983 claim against a physician who was under contract with a state to provide services to inmates at a state prison hospital. 487 U.S. at 42. The Supreme Court held that because the state was obligated to provide adequate medical care to its inmates, and thus employed the physician to fulfill this obligation, the physician was "clothed with the authority of state law." *Id.* at 55. Here, the Fussells have not alleged Defendants have any

such relationship with the State of Arizona. The Fussells also rely on *Mathews v. Eldridge*, 424 U.S. 319 (1976), to argue that Defendants' "quasi-governmental role in regulating residency" and "arbitrary revocation attempts . . . raise due process issues warranting discovery, not dismissal." (Doc. 49 at 6.) But the issue in *Mathews* was whether a governmental agency violated a plaintiff's due process rights. 424 U.S. at 323. Because the Fussells have not plausibly alleged any connection between Defendants and any state or government actor, *Mathews* is distinguishable.

The Fussells have therefore failed to plead a cognizable claim under Section 1983, so this claim is dismissed. *See, e.g.*, *Harris v. Walgreens*, 2012 WL 6090272, at *2 (D. Nev. 2012) (dismissing a plaintiff's Section 1983 claim for failing to allege defendants acted under color of state law nor alleging any other state actor). The Fussells' First and Fourteenth amendment claims, construed as proceeding under Section 1983, are dismissed for the same reason. *See, e.g.*, *Montes v. Fernandez*, 2018 WL 1729344, at *1 (D. Ariz. 2018) (construing a plaintiffs' deprivation of constitutional rights allegations as proceeding under Section 1983 and then dismissing the claim for failing to allege the defendant acted under color of state law). But because it is not "absolutely clear" the Fussells could not cure these defects, they are given leave to amend. *See Jackson*, 749 F.3d at 767; *Lopez*, 203 F.3d at 1130.

### D.    42 U.S.C. § 1985 Claims

The Fussells also seek relief under Section 1985 and allege "Defendants engaged in a coordinated conspiracy to violate [the Fussells'] civil rights through their corporate structure" because (1) Sun Vista's manager stated she was following corporate directives, (2) Defendants engaged in a coordinated refusal to respond to the Fussells' complaints, and (3) Defendants' corporate structure "facilitated this conspiracy by enabling [Defendants] to maintain a façade of neutral policies while implementing discriminatory practices." (Doc. 53 ¶¶ 63–64.) Section 1985 consists of three subsections. 42 U.S.C. § 1985. While Defendants only address why the SAC fails under Section 1985(3), (Doc. 39 at 5), it is unclear under which subsection the Fussells bring this claim. Regardless, for the reasons

explained below, they have not pled facts sufficient to state a claim under any subsection.

Under Section 1985(1), "a plaintiff must allege a conspiracy to interfere with, or prevent a person, from holding office, trust, or place under the United States." *Hess v. Arizona*, 2024 WL 5237656, at *7 (D. Ariz. 2024); 42 U.S.C. § 1985(1). The SAC does not allege any facts that Defendants conspired to prevent or interfere with any person holding office, trust, or place under the United States. *See, e.g.*, *Hess*, 2024 WL 5237656, at *7 (dismissing a plaintiff's Section 1985(1) claim on the same grounds); *Berry v. California*, 2010 WL 2740288, at *5 (C.D. Cal. 2010) (dismissing a plaintiff's Section 1985(1) claim for failing to allege that the defendants "interfered with an officer's performance of his duties"), *report and recommendation adopted*, 2010 WL 2740291 (C.D. Cal. 2010).

Section 1985(2) proscribes "conspiring to obstruct justice or intimidate parties, witnesses, or jurors." *Berry*, 2010 WL 2740288, at *5; 42 U.S.C. § 1985(2). The first clause of Section 1985(2) provides a cause of action for impeding access to federal courts. *See Portman v. County of Santa Clara*, 995 F.2d 898, 908 (9th Cir. 1993). The SAC does not allege any facts that Defendants impeded the Fussells' access to federal courts, and indeed, the Fussells were able to file this action. *See, e.g.*, *Hess*, 2024 WL 5237656, at *7 (dismissing a plaintiff's Section 1985(2) claim for lack of "facts concerning denial of access to the federal courts," particularly considering the plaintiff's ability to file in the court). The second clause of Section 1985(2) "applies to conspiracies to obstruct the course of justice in state courts." *Kush v. Rutledge*, 460 U.S. 719, 725 (1983). The SAC does not allege any state court proceedings nor actions by Defendants relating to state court proceedings. *See, e.g.*, *Hess*, 2024 WL 5237656, at *7 (dismissing a plaintiff's Section 1985(2) claim for failing to "allege facts indicating any [defendant] conspired to impede, hinder, obstruct, or defeat the course of justice in any State or Territory in violation of equal protection based upon [the plaintiff's] race"); *Berry*, 2010 WL 2740288, at *5 (dismissing a plaintiff's Section 1985(2) claim in part for failure to "allege that defendants obstructed justice").

Under Section 1985(3), plaintiffs must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 2(1983). A viable Section 1985(3) claim "requires at least one of the wrongdoers in the alleged conspiracy to be a state actor." *Pasadena Republican Club*, 985 F.3d at 1171. Defendants argue the Fussells' Section 1985(3) claim fails because they do not allege a state actor was involved. (Doc. 39 at 5.) Defendants are correct that because the Fussells have not identified any state actor in the alleged conspiracy, this claim fails. *See, e.g.*, *TL Harvey*, 2024 WL 4057455, at *4 (dismissing a plaintiff's claim for failing to identify a state actor was involved in the alleged conspiracy).

Although it is unclear whether the Fussells can cure the defects in this claim, given the Ninth Circuit's liberal policy favoring amendments and general directive that leave to amend should be freely granted, the Fussells are given leave to amend. *See Lopez*, 203 F.3d at 1130.

## E.    Other Potential Claims and Requests for Relief

In the SAC's table of authorities, the Fussells cite 8 U.S.C. § 1324b, and the Arizona Consumer Fraud Act ("ACFA"), (Doc. 53 at 3), but these claims are not invoked in Counts One through Eight of the SAC, (*id.* ¶¶ 23–64). Similarly, the SAC briefly references the Americans with Disabilities Act ("ADA") but does not invoke this claim in Counts One through Eight. (*See, e.g.*, *id.* ¶ 1.) Defendants argue that to the extent the Fussells assert these claims, the claims should be dismissed.[7] (Doc. 39 at 8, 10–11.) The Fussells also

---

[7]    Defendants also argue that if the Fussells assert a claim under 42 U.S.C. § 2000d, the claim should be dismissed. (Doc. 39 at 12.) In their previous complaints, the Fussells cited or referenced 42 U.S.C. § 2000d in their table of authorities. (Doc. 1 at 8; Doc. 29 at 2.) But they do not cite this statute in their SAC. (*See* Doc. 53.) Because an amended complaint supersedes the original complaint and prior amended complaints, rendering these prior complaints as nonexistent, Defendants' argument need not be addressed, because the Fussells do not plead any claims under 42 U.S.C. § 2000d in the SAC. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

1    request relief or damages under the Equal Access to Justice Act ("EAJA"), (Doc. 53 ¶ 73),

2    and injunctive relief, (*Id.* ¶ 72).  Defendants assert the Fussells are not entitled to these

3    forms of relief, so those portions of the SAC should be dismissed.  (Doc. 39 at 12–14.)

4    Each of these claims and requests for relief are addressed in turn.

### 1.  8 U.S.C. § 1324b

6    Defendants argue the Fussells' 8 U.S.C. § 1324b claim should be dismissed because

7    the statute "only prohibits discrimination in *employment*; it does not prohibit discrimination

8    in a landlord-tenant relationship."  (Doc. 39 at 10.)  The Fussells respond that "[w]hile

9    [Section 1324b] may not directly apply," the Fussells "seek leave to amend if discovery

10   reveals employment relationships."  (Doc. 49 at 7.)

11   Section 1324b provides various causes of action for "[u]nfair immigration-related

12   employment practices."  8 U.S.C. § 1324b.  The statute provides, in relevant part, that "[i]t

13   is an unfair immigration-related employment practice for a person or other entity to

14   discriminate against any individual . . . with respect to the hiring, or recruitment or referral

15   for a fee, of the individual *for employment* or the discharging of the individual *from*

16   *employment*." 8 U.S.C. § 1324b(1) (emphases added); *see also Nat'l Ctr. for Immigrants'*

17   *Rts., Inc. v. I.N.S.*, 913 F.2d 1350, 1369 (9th Cir. 1990) (noting Section 1324b "prohibits

18   *employment discrimination* based on national origin or citizenship (emphasis added)),

19   *rev'd on other grounds*, 502 U.S. 183 (1991).  To the extent the Fussells assert a claim

20   under Section 1324b, the SAC does not allege an employment relationship between the

21   Fussells and Defendants.  (*See* Doc. 53.)

22   Therefore, the Section 1324b claim is dismissed.  *See Delphin v. Maganola*, 2023

23   WL 4291067, at *3 (C.D. Cal. 2023) ("Plaintiff must assert all factual allegations to support

24   his claims in the complaint itself.").  Leave to amend is not granted because it would be

25   futile in light of the landlord-tenant relationship between the parties.

### 2.  ACFA

27   Defendants also argue the Fussells' ACFA claim should be dismissed because the

28   SAC "does not allege any of the necessary elements to establish fraud under the [ACFA]

1    or to establish fraud in accordance with the Federal Rules of Civil Procedure." (Doc. 39 at

2    11.)  The elements of an ACFA claim are "a false promise or misrepresentation made in

3    connection with the sale or advertisement of merchandise and the hearer's consequent and

4    proximate injury."  *Henderson v. Chase Home Fin., LLC*, 2010 WL 1962530, at *3 (D.

5    Ariz. 2010) (quoting *Parks v. Macro-Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. Ct. App.

6    1979)); *see* Ariz. Rev. Stat § 44-1522(A).

7         As noted above, the SAC cites the ACFA in its table of authorities but does not

8    otherwise include allegations that could be construed as an ACFA claim.  (*See generally*

9    Doc. 53.)  In their response, the Fussells argue this claim arises from "potentially deceptive

10   demands," citing paragraph 15 of the SAC.  (*See id.* ¶ 15.)  The Fussells state this claim is

11   therefore actionable "with further factual development through discovery," so "[d]ismissal

12   is premature."  (Doc. 49 at 7.)  But paragraph 15 alleges Sun Vista management claimed

13   they learned of Eilleen's residency after she requested an identification badge, and "then

14   changed their story to claim she had registered for an event.  When both these explanations

15   proved false, they finally admitted to not knowing how they learned of her residency."

16   (Doc. 53 ¶ 15.)  Neither this paragraph nor the rest of the SAC states or implies Defendants'

17   "made a false promise or misrepresentation in connection with the sale or advertisement of

18   merchandise." *See* Ariz. Rev. Stat. § 44-1522(A).

19        The Fussells have failed to plead a cognizable claim under the ACFA, and therefore

20   this claim is dismissed without leave to amend.  *See Litmon v. Harris*, 768 F.3d 1237, 1241

21   (9th Cir. 2014) ("[A] liberal interpretation of a pro se civil rights complaint may not supply

22   essential elements of the claim that were not initially pled." (citation modified));

23   *D'Agostino v. Comenity Cap. Bank*, 2025 WL 69373, at *8 (D. Ariz. 2025) (dismissing a

24   plaintiff's ACFA claim and finding amendment would be futile when the plaintiff failed to

25   allege defendants "sold or advertised any merchandise, made any sort of related false

26   promise or misrepresentation, or [the plaintiff] relied on such a false promise or

27   misrepresentation," and defendants' alleged conduct regarding a debt purchase was

28   "plainly outside of the scope of the statute").

### 3.  ADA

To the extent the Fussells assert a disability discrimination claim under the Americans with Disabilities Act ("ADA"), this also fails.  Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  A plaintiff must therefore show: "he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).  Defendants argue the Fussells' ADA claim fails because "the mobile home park at issue in this case is not a place of public accommodation."  (Doc. 39 at 9.)  The Fussells respond that "the rental office where demands occurred . . . is a public accommodation" under the ADA.  (Doc. 49 at 6.)

Defendants are correct that the ADA does not apply here because "[p]rivate mobile home parks," like Sun Vista, "are generally not places of public accommodation."  *Hardy v. Broadway Ests. Mobile Home Park LLC*, 2019 WL 5719210, at *2 (D. Ariz. 2019); *id.* (holding that because a plaintiff's complaint concerned her mobile home lot, the ADA did not apply).  While it is true that the Sun Vista rental office is a place of public accommodation because it is a "common area," *see Hardy*, 2019 WL 5719210, at *2; *Kalani v. Castle Vill. LLC*, 14 F. Supp. 3d 1359, 1370 (E.D. Cal. 2014), the SAC does not allege the Fussells were in any way denied access to the rental office, (*see* Doc. 53). Indeed, Fussell's disability discrimination claim is premised on Defendants' "rigid application of credit requirements," which relates to the Fussells' residence in their Sun Vista lot rather than their access to Sun Vista's rental office.  (*See id.* ¶ 27.)

Because it is not clear that amendment would be futile, the Fussells are given leave to amend their ADA claim.  *See Lopez*, 203 F.3d at 1130.

### 4.  EAJA

As for the Fussells' request for costs and fees under the EAJA, Defendants argue the EAJA's remedies only apply to plaintiffs in lawsuits brought against the United States or an official of the United States acting in their official capacity, which do not apply here. (Doc. 39 at 12–13.)

There are two provisions for costs and fees under the EAJA.  The first allows a prevailing party to recover costs and fees from "[a]n agency that conducts an adversary adjudication."  5 U.S.C. § 504(a)(1).  The second allows a prevailing party to recover costs and fees "in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity."  28 U.S.C. § 2412. Because Defendants are not administrative agencies nor government actors, the Fussells' request for costs and fees under the EAJA is dismissed without leave to amend.

### 5.  Injunctive Relief

Defendants next argue the Fussells have not established injunctive relief is appropriate in this case under the four factors set forth in *eBay, Inc. v. MERCexchange, LLC*, 547 U.S. 388, 391 (2006) (injunctive relief is available when a plaintiff has suffered irreparable injury, remedies available at law are inadequate, a remedy in equity is warranted, and the public interest would not be disserved by an injunction).  (Doc. 39 at 13.)

The SAC's prayer for relief includes a request to permanently enjoin Defendants from "engaging in discriminatory housing practices, retaliating against protected activities, imposing pretextual requirements, or selectively enforcing policies," as well as requests for specific remedial actions.  (Doc. 53 ¶ 72.)  But it is premature to reach this determination at the motion to dismiss stage.  *See, e.g.*, *Tanglewood E. Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1576 (5th Cir. 1988) (disagreeing with defendants' argument that plaintiffs failed to establish the injunctive relief requirements because "whether the trial court will reach and grant [permanent injunctive] relief on the merits can now only be a matter of speculation," which forms "no part" of a motion to dismiss); *Friends of Frederick*

*Seig Grove #94 v. Sonoma Cnty. Water Agency*, 124 F. Supp. 2d 1161, 1172 (N.D. Cal. 2000) (denying defendants' motion to dismiss a plaintiff's request for injunctive relief as premature because "it is by no means evident that the Court can reach such a determination on a motion to dismiss"); *Bodnar v. County of Riverside*, 2019 WL 1877602, at *7 (C.D. Cal. 2019) (holding that because injunctive relief is a remedy and not an independent claim in itself, "courts have found that it is premature to dispose of a plaintiff's request for injunctive relief at the motion-to-dismiss stage" (citation omitted)).  Defendants' motion to dismiss the Fussells' request for permanent injunctive relief is denied.

Accordingly,

**IT IS ORDERED** that Defendants' motions to dismiss the SAC (Docs. 39, 56) are **granted in part and denied in part**, as follows:

(1)    Count One (FHA) premised on Eilleen's race discrimination claim, the Fussells' retaliation claims, and the Fussells' disability claims are dismissed with leave to amend, but Paul's FHA race discrimination claim may proceed;

(2)    Counts Two (Section 1981), Three (Section 1982), Four (Section 1983), Five (First Amendment retaliation), Six (Due Process), Seven (Equal Protection), and Eight (Section 1985) are dismissed with leave to amend;

(3)    The Fussells' ADA claim is dismissed with leave to amend;

(4)    The Fussells' Section 1324b and ACFA claims, and their request for fees and costs under the EAJA, are dismissed without leave to amend;

(5)    The Fussells' request for permanent injunctive relief may proceed.

**IT IS FURTHER ORDERED** that the Fussells may have **14 days** to file a Third Amended Complaint ("TAC").  Consistent with LRCiv 15.1, the Fussells shall file, concurrently with any TAC, a notice of filing the amended pleading that attaches a copy of the amended pleading indicating in what ways it differs from the SAC.

Dated this 29th day of July, 2025.

Honorable Sharad H. Desai
United States District Judge